IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOWARD LOOMIS, ) | |
| ) | Case No. CV-04-617-S-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| HERITAGE OPERATING, L.P., ) | |
| a Delaware Limited Partnership, ) | |
| Doing Business as V-1 PROPANE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment (Docket No. 24), Plaintiff's Motion to Strike and Motion in Limine (Docket No. 32), and Plaintiff's Motion to Strike Defendant's Summary Judgment Reply Brief and Affidavit (Docket No. 34). The Court held oral argument on June 29, 2006 and now issues the following decision.

## FACTUAL BACKGROUND

In June 2000, Howard Loomis began working for V-1 Propane as a propane truck driver. Three years later, Heritage Operating acquired V-1 Propane. Pursuant to the acquisition, on January 10, 2003, Loomis signed and kept a copy of

the employee hand book, which stated that he was an at will employee. While working on December 24, 2003, Loomis experienced shoulder pains. On December 26, 2003, Loomis reported to Heritage that he had lost the use of his left arm the day before.

The following week, on January 2, 2004, Loomis met with a physician to discuss the pains in his arm. Loomis' physician provided Loomis with documentation requesting that Loomis be removed from his truck driving position to allow him time to recover. Upon receipt of the physician's orders, Heritage reassigned Loomis to light office work.

On March 12, 2004, based on the problems that originated in December, numbness and loss of use in his left arm, coordination problems, blurred vision, and a leg that would not move properly, Loomis underwent a series of medical tests. Loomis was ultimately diagnosed with Multiple Sclerosis ("MS") by his treating physician, Dr. Lindholm. The next day, March 13, 2004, Loomis applied for disability at the Social Security Administration. Seven days later, on March 20, 2004, Heritage informed Loomis that because he could not legally and safely drive a propane truck, he would be terminated. Heritage allowed Loomis to continue to perform light office work through the end of that pay period. Loomis was discharged six days later, on March 26, 2004.

**Memorandum Decision and Order - Page 2**

## MOTION FOR SUMMARY JUDGMENT

**I.     Standard of Review for Summary Judgment**

Heritage seeks summary judgment against Loomis on all of his claims. Loomis' claims include the following: (1) disability discrimination in violation of the American's with Disability Act ("ADA"), 42 U.S.C. 12101 *et. seq.* and the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901, (2) wrongful discharge, (3) negligent infliction of emotional distress, and (4) breach of implied covenant of good faith and fair dealing in employment contract.

Pursuant to Federal Rule of Civil Procedure 56(c), "judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The evidence is viewed in light most favorable to the nonmoving party. *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 703 (9th Cir. 1999). If no "disputes exist, the moving party is entitled to judgment as a matter of law." *Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).

**Memorandum Decision and Order - Page 3**

## II.    Count One:  Disability Discrimination in Violation of the ADA and the Idaho Human Rights Act (IHRA)

The Idaho Supreme Court has held that the IHRA will be interpreted in a manner consistent with the ADA.  *Foster v. Shore Club Lodge*, 908 P.2d 1228, 1232-33 (1995).  Thus, the Court will address Loomis' ADA and the IHRA claims together.

To establish a prima facie case under the ADA, a plaintiff must prove that he (1) was a disabled person within the meaning of the ADA; (2) was a "qualified" individual and able to perform, with or without accommodations, the essential functions of the job; and (3) was terminated by his employer because of his disability.  *Joseph v. Pac. Bell*, 443 F.3d 1050, 1059 (9th Cir. 2006); *Kennedy v. U.S.*, 90 F.3d 1477, 1481 (9th Cir. 1996).[1]  When analyzing disability discrimination claims, the courts have been directed by Congress to engage in a case-by-case analysis.  *Toyota Motor Mfr. v. Williams*, 534 U.S. 184, 198 (2002).

### A.    Disabled Person Within the Meaning of the ADA

To qualify as disabled under the ADA, a person must have a physical or mental impairment that substantially limits one or more of the major life activities

---

[1] The general goal of the ADA is to ensure that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

**Memorandum Decision and Order - Page 4**

of such individual.  *See Toyota,* 534 U.S. at 194-95; see also 42 U.S.C.

§ 12102(2)(A).[2]

### 1.     Physical or Mental Impairment

Physical or mental impairment means "[a]ny physiological disorder, or condition, . . . or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs . . . ." 29 C.F.R. § 1630.2(1).  Loomis' expert, Dr. Meske, stated that MS is a neurologic disease.  (Meske Depo. 36:3-13).  In this case, it is undisputed that Loomis had MS at the time of his termination and still has it today.  Thus, Loomis clearly has a physical or mental impairment under the ADA.

### 2.     Substantially Limits Major Life Activity

Having determined that MS is a physical or mental impairment under the ADA, and that Loomis has MS, the Court next turns to whether Loomis' MS substantially limited a major life activity at the time of his discharge.  *Kaplan v. City of Las Vegas*, 323 F.3d 1226, 1230-31 (9th Cir. 2003).  "The word 'substantial' . . . clearly precludes impairments that interfere in only a minor way."  *Toyota*, 534 U.S. at 197 (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565

---

[2] Alternatively, a person may be defined as disabled if there is "a record of such an impairment; or . . . being regarded [by their employer as] having such an impairment." 42 U.S.C. §§ 12102(2)(B), (C).  The Court will not address these two alternatives because Plaintiff has met his burden under the first approach.

**Memorandum Decision and Order - Page 5**

(1999)).  The words "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" 29 C.F.R. § 1630.2(i); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005).  The Ninth Circuit has recognized,

> "that the illustrative list of major life activities requires the activity only to be of comparative importance and central to the life process itself, and it need not have a public, economic, or daily character.  To be a major life activity, the activity need not be essential to survival, but rather of central importance to most people's daily lives."

*Head,* 413 F.3d at 1061-62.

Loomis argues that his MS substantially limits his ability to perform at least two ADA recognized major life activities: (1) performing manual tasks, and (2) working.  With respect to manual tasks, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job."  *Toyota*, 534 U.S. at 200-01.  Loomis states that he has experienced loss of the full use of his left hand, loss of feeling in his left hand and inability to lift certain items.  Furthermore, Loomis' treating physician, Dr. Lindholm, stated that his,

> "strength, dexterity, and coordination problems were physical impairments and limitations which negatively impacted his ability to perform manual tasks.  For example, because of these limitations, Mr. Loomis had difficulty using his left arm for lifting.  Additionally, Mr.

**Memorandum Decision and Order - Page 6**

> Loomis' dexterity and coordination limitations negatively affected his motor skills, diminishing and limiting his ability to use his left hand for many manual tasks."

(Lindholm Aff., ¶ 6).

The Court concludes that Loomis has provided sufficient evidence to show that his MS prevents him from performing the variety of tasks central to most people's daily lives. The Court will note that "Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, [its] precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact. *Head,* 413 F.3d at 1058. Loomis has done at least what is required by the Ninth Circuit. Accordingly, Loomis has established a genuine issue of material fact as to whether his MS substantially limited the major life activity of performing manual tasks at the time of his discharge.

In addition to manual tasks, Loomis argues that his MS has substantially limited his ability to work. In the context of work, the phrase "substantially limits" means that an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. §

**Memorandum Decision and Order - Page 7**

1630.2(j)(3)(i).  However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i); *see also Sorenson v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1088-89 (10th Cir. 1999) (although plaintiff with MS had a recognizable physical impairment, she was not disabled under the ADA because her disability did not disqualify her from performing other jobs for which she qualified by virtue of her education and training).

Loomis contends that his inability to fully use his left arm prevents him from doing the vast majority of jobs for which he is qualified.  For example, the record indicates that he applied for a job as a "counter person" at an auto parts store, but was denied the position because he was not able to lift what the job required.  (Loomis Depo. 89:15-19).  Heritage counters that Loomis' impairment did not prohibit him from getting a broad range of jobs similar to the one that he had, and thus, did not substantially limit a major life activity.  For example, since Loomis' employment with Heritage, he has been employed on a part-time basis with his cousin, Dale Loomis, driving a dump truck, and also with Southern Idaho Timber Protective, watching for forest fires and driving a 350 Ford pickup.  (Loomis Depo. 26:1 - 30:23).  The Court finds that although both of these jobs may be similar to driving a propane truck, neither of them appear to require Loomis to perform any

**Memorandum Decision and Order - Page 8**

heavy lifting as required by the propane delivery job and the auto parts job. These jobs may therefore be considered a different class of jobs. The Court therefore concludes that the evidence before it presents at least a question of fact as to whether Loomis' MS affects his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

Accordingly, the Court finds that Loomis has established that he has a physical or mental impairment as defined under the ADA. Additionally, Loomis has provided sufficient evidence to create a genuine issue of material fact as to whether his impairment substantially limits a major life activity.

### B.  Qualified Individual Able to Perform With or Without Accommodation

"The ADA prohibits employment discrimination only against 'qualified individuals' with disabilities." *Cripe v. City of San Jose*, 261 F.3d 877, 884 (9th Cir. 2001). For a person to establish that he was a qualified individual, he must show that he is "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). "The term essential functions means the fundamental job duties of the

**Memorandum Decision and Order - Page 9**

employment position" (29 C.F.R. 1630.2 (n)(1)), "not the marginal functions of the position." *Morton v. UPS*, 272 F.3d 1249, 1255 (9th Cir. 2001).

There is no question that Loomis was qualified to perform the essential functions of his job prior to developing MS. Heritage argues, however, that once diagnosed with MS, Loomis was no longer qualified to drive a propane truck – an essential function of his job. Heritage states that "[i]t was based upon this reason and this reason alone, that Heritage was forced into the position of terminating its employment relationship with Loomis . . . ." (Memorandum in Support of Motion for Summary Judgment, p. 7). Thus, the Court must consider whether Loomis, with his MS, was qualified, with or without a reasonable accommodation, to drive the propane truck.

The Department of Transportation ("DOT") has set forth the qualifications individuals must meet in order to legally drive a commercial vehicle, including a propane truck. A person is not qualified "unless he/she is physically qualified to do so and has on his/her person . . . a medical examiner's certificate . . . ." 49 C.F.R. § 391.41(a). DOT's physical qualifications state that a person can have "no established medical history or clinical diagnosis of . . . muscular, neuromuscular, or vascular disease which interferes with his ability to control and operate a commercial motor vehicle safely . . . ." 49 C.F.R. § 391.41(b)(7).

**Memorandum Decision and Order - Page 10**

Heritage argues that MS is a muscular or neuromuscular disease.  Therefore, Loomis' March 12, 2004, MS diagnosis automatically invalidated his CDL, and prevented him from legally driving the propane truck.  However, Loomis introduced testimony from Dr. Meske stating that Loomis did not have a muscular, neuromuscular, or vascular disease.  Dr. Meske stated that Loomis has MS, which is a neurologic disease.  (Meske Depo. 36:3-13).  Thus, Loomis' MS did not per se disqualify him from driving the propane truck.[3]  Additionally, Dr. Meske, who performs DOT physical examinations for individuals seeking a DOT license, testified that "MS is not a disqualifier."  (Meske Depo. 36:21).  Dr. Meske further stated that "I always have to review those regulations when I'm qualifying somebody, but we have patients that have strokes and have fairly major neurologic impairments, and they're still operating a vehicle."  (Meske Depo. 36:14-37:1).

Additionally, individuals are qualified to drive a commercial vehicle when they have "no established medical history or clinical diagnosis of . . . muscular, neuromuscular, or vascular disease *which interferes* with [their] . . . ability to

---

[3] Heritage also referenced the Conference on Neurological Disorders and Commercial Drivers Pub. No. FHWA-MC-88442, dated July 1988, as the guideline for determining whether someone with MS may operate a commercial vehicle.  However, the document itself states that "[t]he contents do not necessarily reflect the official policy of the Department of Transportation . . . . This report does not constitute a standard, specification, or regulation."  This document contains recommendations only, it is not binding, and it is not the current law governing any issue before this Court.

**Memorandum Decision and Order - Page 11**

control and operate a commercial motor vehicle safely . . . ." 49 C.F.R. § 391.41(b)(7)(emphasis added). Thus, the condition must exist *and* interfere, not merely exist. Simply being diagnosed with MS is not an automatic disqualifier; there must be a showing that the MS actually interfered with Loomis' ability to safely operate the propane truck.

Heritage suggests that Loomis' MS interfered with his ability to drive the propane truck as determined by Loomis' physician, Dr. Lindholm. It is true, Dr. Lindholm requested light duty for Loomis based on the weakness in his arm. However, Dr. Lindholm did not specifically state that Loomis could not drive. Dr. Lindholm stated that "Howard [Loomis] may perform sedentary work not requiring use of 2 arms. He is only able to use his right arm. No lifting, squatting, bending." (Lindholm Aff., ¶7).[4] Furthermore, Loomis, at the time of his discharge, possessed a current CDL and medical card. (Loomis Depo. 23:6-26:10).

Under these circumstances, the Court finds that Loomis has provided evidence sufficient to create a genuine issue of material fact as to whether Loomis could drive a propane truck, an essential duty of his job. Because there is a genuine issue of material fact as to whether Loomis could perform the essential duties of his

---

[4] Loomis' doctor did not address his ability to drive until October 2004, eight months after Loomis was discharged. (Lindholm Depo. 14:23-15:3); (Meske Depo. 37:18-23).

**Memorandum Decision and Order - Page 12**

job even without an accommodation, the Court need not address whether he could perform his duties with an accommodation.[5]

### C. Termination Based on Disability

Finally, once an ADA plaintiff establishes that he is a disabled person within the meaning of the ADA and that he was a qualified individual and able to perform, with or without accommodations, the essential functions of the job, the plaintiff must show that he was terminated by his employer because of his disability. *Joseph*, 443 F.3d at 1059; *Kennedy*, 90 F.3d at 1481.

As stated above, Heritage indicated that once diagnosed with MS, Loomis was no longer qualified to drive a propane truck. Heritage states that "[i]t was based upon this reason and this reason alone, that Heritage was forced into the

---

[5] Alternatively, Heritage argues that Loomis contradicted himself by stating in his ADA claim that he could drive a propane truck but admitting on applications for state unemployment and federal disability (Social Security Disability Insurance ("SSDI")) that he could not perform the essential function of his job. "When an ADA plaintiff has previously made an application for SSDI, in order to defeat summary judgment, he must provide an explanation that is sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of [his] job, with or without reasonable accommodation." *McClean v. Case Corp., Inc.*, 314 F.Supp.2d 911, 920 (D.N.D. 2004) (internal quotations omitted) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999).

Loomis argues that he simply told the SSDI representative what his employer told him - that he could not do his job because of his MS. Loomis suggests that it was therefore never his intent to state that he personally believed he could not perform the essential functions of his job. Given Loomis' explanation, the Court finds that a reasonable juror could conclude that Loomis could perform his essential job functions.

**Memorandum Decision and Order - Page 13**

position of terminating its employment relationship with Loomis . . . ." (Memorandum in Support of Motion for Summary Judgment, p. 7). Accordingly, there is no dispute that Loomis' termination was based on his disability.

Because Loomis has demonstrated that: (1) he has a physical impairment as defined by the ADA and that there are genuine issues of material fact as to whether Loomis' MS substantially limited a major life activity; (2) there are genuine issues of material fact as to whether Loomis could perform the essential functions of his job, with or without a reasonable accommodation; and (3) Loomis was terminated because of his MS, the Court will deny summary judgment on Loomis' ADA and IHRA claims.

## III.  Count Two: Wrongful Discharge

In *Pavon v. Swift Transp. Co.,* 192 F.3d 902, 909 (9th Cir. 1999), the court found that wrongful discharge "is only available where there is an absence of an adequate statutory remedy . . . ." In this case, Loomis has statutory remedies under the ADA and IHRA for the allegations asserted in his wrongful discharge claim. Therefore, the Court will grant summary judgment in favor of Heritage on Loomis' wrongful discharge claim.

**Memorandum Decision and Order - Page 14**

**IV.   Count Three: Negligence Infliction of Emotional Distress**[6]

To establish "a claim for negligent infliction of emotional distress there must be both an allegation and *proof* that a party claiming negligent infliction of emotional distress has suffered a physical injury, i.e., a physical manifestation of an injury *caused* by the negligently inflicted emotional distress." *Cook v. Skyline Corp.*, 13 P.3d 857, 865-66 (Idaho 2000) (emphasis in original, internal quotations omitted). Thus, the question is whether Loomis has presented facts supporting his claim that Heritage's actions caused him an injury which is manifested by physical symptoms.

Loomis asserts that he suffered mental suffering, loss of sleep, headaches and stress disorders. Assertions in a complaint of a manifestation of a physical injury are sufficient to raise an issue of fact, which requires a trial on the issue, so long as the allegations do not require expert testimony. *Cook*, 13 P.3d at 866. At least some of Loomis' allegations, loss of sleep and headaches, do not require expert testimony. Accordingly, the Court will deny the motion for summary judgment on Loomis' claim for negligent infliction of emotional distress.

**V.   Count Four: Breach of Implied Covenant of Good Faith and Fair**

---

[6] Loomis indicated at oral argument that he is no longer pursuing his intentional infliction of emotional distress claim.

**Memorandum Decision and Order - Page 15**

**Dealing in Employment Contract**

An implied covenant of good faith and fair dealing exists in all employment relationships.  *See Metcalf v. Intermountain Gas Co.*, 778 P.2d 744 (Idaho 1989). "An employee's handbook can constitute an element of the contract."  *See Harkness v. City of Burley*, 715 P.2d 1283, 1286 (Idaho 1986).  Under the work retention assistance program in the Heritage employment handbook, if Loomis had a condition determined to have the potential of resulting in the inability to perform the essential functions of his job, but Loomis was not yet disabled, Heritage was required to assist Loomis with rehabilitation in an attempt to retain the ability to perform his job.

As discussed above, whether Loomis' MS prevented him from performing the essential functions of his job is a disputed issue of fact.  That same dispute prevents summary judgment on Loomis' claim that Heritage breached the implied covenant of good faith and fair dealing.

## MOTIONS TO STRIKE

Loomis filed two motions to strike.  In his first motion, Loomis asks the Court to strike from Heritage's statement of facts any reference to a seizure suffered by Loomis six months after his termination.  Loomis also request an order in limine

**Memorandum Decision and Order - Page 16**

preventing reference to the seizure at trial.  With respect to the statement of facts, the Court will deem the motion moot because the Court did not rely on the information in reaching its decision.  With respect to the motion in limine, the Court will deny the motion at this time, without prejudice, and Loomis may raise the issue just prior to trial.

Loomis' second motion to strike asks the Court to strike Heritage's summary judgment reply brief and supporting affidavit because they were untimely filed. Heritage filed its motion for summary judgment on May1, 2006, Loomis filed his response brief on May 23, 2006, and Heritage filed its reply brief on June 12, 2006.

After receiving the motion to strike, counsel for Heritage emailed counsel for Loomis and explained why Heritage believed its June 12 filing was timely.  In response to that email, counsel for Loomis essentially agreed with Heritage's deadline computation based on the rules.  Loomis argued, however, that the rules do not apply in this case because the language in Judge Lodge's initial Case Management Order and the parties' stipulated litigation plan required that any reply brief shall be due ten days from receipt of the response brief.  Loomis made this argument despite the fact that his motion to strike relied solely on the rules, and not on Judge Lodge's order or the parties' stipulated litigation plan.

The Court finds that based solely on the federal and local rules, Heritage's

**Memorandum Decision and Order - Page 17**

reply brief was timely filed. However, if the Court considers the language in the Case Management Order and stipulated litigation plan, the reply brief may be considered untimely. Ironically, however, as noted by Heritage, Loomis' response brief would likewise be considered untimely under these circumstances. Thus, the Court would be compelled to strike not only Heritage's reply brief, but also Loomis' response brief – a move that could very well be fatal to Loomis' entire case.

In the end, the Court will strike neither brief. However, the Court is concerned that Loomis' argument was disingenuous. Loomis initially based his motion upon the federal and local rules – under which the Heritage's brief was timely – and then shifted his argument to rely upon Judge Lodge's case management order – under which his own response brief was untimely. This type of lawyering should not be rewarded. The Court will therefore grant Heritage's request for sanctions and require Loomis to pay Heritage's costs and fees associated with the motion to strike the reply brief.

**Memorandum Decision and Order - Page 18**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 24) shall be, and the same is hereby, GRANTED in part and DENIED in part. The motion is granted with respect to Count 2 and denied with respect to Counts 1, 3 and 4.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike and Motion in Limine (Docket No. 32) shall be DEEMED MOOT with respect to the request to strike portions of the statement of facts. The motion shall be DENIED WITHOUT PREJUDICE with respect to the motion in limine.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Summary Judgment Reply Brief and Affidavit (Docket No. 34) shall be, and the same is hereby, DENIED. Additionally, the Court will grant Heritage's request for sanctions and require Loomis to pay Heritage's costs and fees associated with the motion to strike the reply brief.

IT IS FURTHER ORDERED that the Court's Clerk will, by separate order, schedule a Rule 16 conference to be held approximately thirty (30) days from the date of this order. The Purpose of that conference will be to set a trial date. Counsel are to conclude all mediation and settlement discussions within that thirty

**Memorandum Decision and Order - Page 19**

(30) day period and advise the Court prior to the scheduled Rule 16 conference whether the case will settle or go to trial.



DATED: **August 3, 2006**

_____
B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - Page 20**