IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HOWARD LOOMIS, | ) | |
| | ) | Case No.  CV-04-617-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| HERITAGE OPERATING, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant's Motion in Limine (Docket No. 94). This decision will also address issues raised at the pretrial conference and subsequently briefed by the parties.  In the interest of time, the Court has determined not to hold oral argument on the matters, and the Court issues the following Memorandum Decision and Order denying the motion in limine and giving the parties guidance for trial.

## ANALYSIS

### I.       Heritage's Motion in Limine

Citing Idaho Code § 49-337(3) and the Idaho Transportation Department's ("IDT") web page, Heritage argues that Idaho Law prohibited Loomis from driving a motor vehicle until such time as he provided written certification from a

physician that he could safely operate a motor vehicle.  Heritage therefore argues

that Loomis should be prevented from presenting evidence at trial that he was

qualified to drive a motor vehicle or qualified for his job as a propane delivery

driver for Heritage.

The advisory opinions on the IDT's web page are not legal authority

regarding driving privileges in Idaho.  They do not lead to a conclusion, as a matter

of law, that Loomis could not drive a motor vehicle until such time as he provided

written certification from a physician that he could do so.

With respect to Idaho Code § 49-337(3), the statute states in relevant part as

follows:

> Each employee whose class A, B or C driver's license is
> suspended, revoked, denied, refused or canceled by this
> state or who loses the privilege to operate a commercial
> motor vehicle in any state for any period, or who is
> disqualified from operating a commercial motor vehicle
> for any period, shall notify his employer of that fact
> before the end of the business day following the day the
> employee received notice of that fact.

Idaho Code § 49-337(3).  This statute simply states what an employee must do if

his license is suspended, revoked, etc. or if he is disqualified from operating a

commercial vehicle.  It does not support a conclusion, as a matter of law, that

Loomis could not drive a motor vehicle until such time as he provided written

certification from a physician that he could do so.  Accordingly, the Court will

deny Heritage's request to prevent Loomis from presenting evidence at trial that he was qualified to drive a motor vehicle or qualified for his job as a propane delivery driver for Heritage

Heritage next argues that Loomis' compensatory damages should be limited to the time period between March 26, 2004 and June 11, 2004 because Loomis' DOT medical card expired on June 11, 2004.  The simple fact that Loomis' medical card expired after Heritage terminated him does not necessarily limit Loomis damages.  Evidence at trial may support a determination that Loomis could not have renewed his medical card after June 11, 2004.  However, evidence may also support a determination that Loomis simply chose not to renew the medical card because he no longer had a job that required one.  These facts must be more fully developed at trial and the Court will not issue an order at this time limiting Loomis' compensatory damages to the time period between his termination and the expiration of his medical card.

## II.     Breach of Implied Covenant of Good Faith and Fair Dealing

The implied-in-law covenant of good faith and fair dealing exists in all employment relationships, including employment at-will relationships.  *See Sorensen v. Comm Tek, Inc.*, 799 P.2d 70, 75 (Idaho 1990); *see also Mitchell v. Zilog, Inc.* 874 P.2d 520, 526 (Idaho 1994).  "A breach of the employment covenant is a breach of the employment contract, and is not a tort.  The potential

recovery results in contract damages, not tort damages." *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 748 (Idaho 1989). Moreover, "the covenant protects the parties' benefits in their employment contract or relationship, and . . . any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant. . . ." *Id*. at 749. However, whether a violation of the covenant exists is not tied to the "amorphous concept of bad faith." *Id*. at 750.

Loomis suggests that a breach of the covenant occurred because Heritage failed to properly train and equip him for his job, and because Heritage lacked respect and concern for his welfare as required by the employee handbook. It is not altogether clear what damages were caused by these alleged breaches, or what remedy is available, but at this point the Court will not cut-off Loomis' breach of the covenant of good faith and fair dealing claim. However, with the above understanding of the law related to such a claim, the Court will take a hard look at the claim when it considers Heritage's Rule 50 motion.

## III.   Non-Economic Damages

This Court has already determined that Loomis cannot receive backpay for time periods in which he would not have been physically able to perform his job. Heritage came forward with evidence that Loomis could no longer perform his job after he suffered a seizure in August 2004, and Loomis failed to present contrary

evidence.  Accordingly, the Court limited backpay to the time period between

Loomis' termination and the date of his seizure.

Heritage now seeks to limit non-economic damages to the same time period.[1]

Heritage cites *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) for the

proposition that after-acquired evidence can limit all damages, including non-

economic damages.  The Court agrees that after-acquired evidence may limit non-

economic damages, but it does not limit such damages as a matter of law.  As this

Court noted in its earlier opinion, this case is somewhat distinguishable from

*Rooney* because the after-acquired information in *Rooney* related to the plaintiff's

pre-termination conduct.  Here, the after-acquired evidence, Loomis' seizure,

occurred six months after Heritage had already terminated Loomis.  Although this

distinction does not change the effect on economic damages, because an employee

should not receive backpay that reflects payments during time periods in which he

would not have been physically able to perform his job, the analysis is different in

the context of non-economic damages.

As Heritage points out, a plaintiff's non-economic damages - mental

anguish, etc. - may be caused by several factors, including, but certainly not

---

[1] Heritage in fact seeks to limit damages to the time period between Loomis' termination and the date his medical card expired.  However, as discussed above, the Court will not limit any damages to that period unless and until the facts regarding expiration of Loomis' medical card are fleshed out.

limited to, termination in violation of the law.  But, this does not mean that Loomis

or Heritage should be limited in what evidence they can present as to what did or

did not cause Loomis's non-economic damages.  On the one hand, Heritage should

be allowed to present evidence of other factors, including the seizure, to support its

argument that Loomis' mental anguish is not the result of his termination, but

rather, a result of his seizure or his illness in general.  *See e.g. Sanchez v. U.S.

Airways, Inc.*, 202 F.R.D. 131, 136 (E.D. Pa. 2001).  On the other hand, Loomis'

should be allowed to argue that his continuing mental anguish is the result of the

manner in which he was terminated regardless of whether he would have, in any

event, been terminated after he suffered the seizure.

The Court recognizes the potential difficulty a jury may have in determining

the cause of Loomis' alleged non-economic damages.  However, at this point,

before evidence has been presented at trial, the Court simply cannot conclude that

Loomis' alleged non-economic damages ceased as of the date of the seizure.  The

Court will determine how to instruct the jury on non-economic damages after the

evidence has been presented at trial.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion

in Limine (Docket No. 94) shall be, and the same is hereby, DENIED.



DATED:  **January 19, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge